990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Glenn V. BREWER and Paula N. Brewer, Appellants
v.
The SOCIALIST PEOPLE'S REPUBLIC OF IRAQ, et al.
 No. 91-5325.
 United States Court of Appeals, District of Columbia Circuit.
 March 17, 1993.
 
 Before MIKVA, Chief Judge, and WALD and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on appeal from the United States District Court for the District of Columbia and the briefs filed by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by this court that the judgment of the district court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Glenn and Paula Brewer appeal the denial of their motion to attach certain assets of Iraq and its State Organization for Tourism located in the District of Columbia or under the control of the United States Government. Because Dames & Moore v. Regan, 453 U.S. 654 (1981), upheld the power of the President to freeze foreign assets and prevent their attachment by private litigants in times of national emergency, we affirm.
 
 
 5
 The Brewers, husband and wife, were hired by the Iraqi Organization for Tourism to manage a resort in southern Iraq. The engagement ended, after only two months, with their expulsion from Iraq at gunpoint in early 1982. The Brewers brought suit in the United States District Court for the Eastern District of Missouri asking for damages for breach of contract (Count I), conversion of property (Count II), and emotional distress (Count III). On September 3, 1986, the court awarded a default judgment in the amount of $83,000, $50,000, and $250,000 on Counts I, II, and III, respectively.
 
 
 6
 The Brewers next moved for attachment and execution on Iraqi property. In orders dated April 11 and May 6, 1988, District Judge Gunn authorized the issuance of writs of execution by any United States district court to attach such assets of the defendants "as may be found to satisfy the judgment entered against defendants on Count II of plaintiff's complaint." Brewer Br. at 11A. Notably absent from these orders is authorization to execute on property in order to satisfy Counts I and III of the complaint. Judge Gunn's decision denying this authority on the basis of the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1601-11 (1988), was affirmed by the Court of Appeals for the Eighth Circuit. See Brewer v. Socialist People's Republic of Iraq, 890 F.2d 97, 101-02 (8th Cir.1989). The Brewers then took their judgment, as limited, to the United States District Court for the District of Columbia asking for writs of execution on Iraqi property found in the District or controlled by the United States Government. In orders dated February 1, 1991, and August 17, 1991, Judge John Garrett Penn denied their motion, invoking the freeze on Iraqi assets ordered by the President on authority of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06. This appeal followed.
 
 The IEEPA provides:
 
 7
 (a)(1) At the times and to the extent specified in section 1701 of this title, the President may, under such regulations as he may prescribe, by means of instructions, licenses or otherwise--
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (B) investigate, regulate, direct and compel, nullify, void, prevent, or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has an interest;
 
 
 11
 by any person, or with respect to any property, subject to the jurisdiction of the United States.
 
 
 12
 50 U.S.C. § 1702 (emphasis added).
 
 
 13
 Shortly after the Iraqi invasion of Kuwait, President Bush froze Iraqi assets in this country pursuant to his authority under the IEEPA. See Executive Order 12,722, 55 Fed.Reg. 31,803 (Aug. 3, 1990); Executive Order 12,724, 55 Fed.Reg. 33,089 (Aug. 13, 1990). Subsequently, Treasury Department regulations were issued on authority of the Orders, and these provided explicitly that
 
 
 14
 [u]nless licensed or authorized pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which, on or since the effective date, there existed an interest of the Government of Iraq.
 
 
 15
 31 C.F.R. § 575.202(e) (1992) (emphasis added).
 
 
 16
 The Brewers do not claim that the blocking of their execution of judgment was unauthorized by statute or by the President. Accordingly, they focus on several constitutional challenges to the President's authority to freeze the Iraqi assets. Unhappily for them, however, the Supreme Court in Dames & Moore rebuffed similar challenges to Presidential orders which, during and after the Iranian hostage crisis, froze Iranian assets, suspended claims pending against Iran in American courts, and transferred jurisdiction over both the Iranian assets and the American claims to an International Claims Tribunal. See 453 U.S. at 662-66, 690.
 
 
 17
 The Brewers claim that the President lacks the power sought to be exercised here because (1) forbidding attachments impinges on the jurisdiction of American courts, Brewer Br. at 10-11; (2) upholding that power amounts to sustaining a "Congressionally authorized George the III," Brewer Reply Br. at 5-7; and (3) interfering with the execution of their judgment amounts to an uncompensated taking in violation of the Fifth Amendment. Brewer Br. at 13-21.
 
 
 18
 The first of these claims was answered explicitly in Dames & Moore. See 453 U.S. at 684-85. If anything, the impingement-on-courts argument was stronger in that case, because there the litigants' claims had been removed from the jurisdiction of Article III courts and assigned to an extraterritorial tribunal, whereas here the Brewers are left in a legal limbo pending further developments in this country's relations with Iraq. Insofar as we understand it, the second of the Brewers' challenges amounts to a claim that delegating emergency authority to a President to suspend the legal process is beyond Congress's enumerated powers. It too has already been answered: As Dames & Moore condoned the suspension of claims before judgment, see 453 U.S. at 675-88, while admitting that this power lies beyond the explicit terms of the IEEPA, see id. at 675, we are bound to accept the suspension of the writ of execution as at the core of the IEEPA's delegation of authority to "prohibit" the "transfer" of "property." See 50 U.S.C. § 1702(a)(1)(B).
 
 
 19
 The Brewers' more viable complaint, then, is their takings challenge. And here the factual differences between this case and Dames & Moore work in their favor: In particular, their position is strengthened by the lack of any alternative forum for litigating their claim. The usual remedy for unconstitutional takings, however, is an action for damages in the United States Court of Federal Claims, not an injunction forbidding the taking from the outset. See Dames and Moore, 453 U.S. at 688-90. Because there is a "reasonable, certain, and adequate provision available for obtaining [whatever] compensation" is due them, the request that we intercede to block this supposed appropriation of their property must be denied. Dames & Moore, 453 U.S. at 689 (quoting Cherokee Nation v. Southern Kansas R. Co., 135 U.S. 641, 659 (1890) (citation omitted).
 
 
 20
 Sensing, perhaps, that their Fifth Amendment damages claim is not appropriately before us and that their other claims are barred by precedent, the Brewers contend that "a suit in the U.S. Court of Claims would be futile, since no doubt the Department of Justice would again throw several lawyers against the Brewers...." Brewer Reply Br. at 9. As ordinary individuals litigating a $50,000 claim that has been placed in limbo by the exercise of presidential authority over foreign policy, the Brewers may indeed face a complex and expensive struggle. While nothing in our disposition of this case should be read to bar them from making future claims for damages in the Claims Court or elsewhere, we note that to prevail in such an action they must establish both the substance of their Fifth Amendment claim and its ripeness for adjudication.